And this time, Mr. May, you start the call. So just to be clear, now we're exclusively on the 809, is that correct? May it please the Court, this appeal, like you said, involves the 809 patent. Hongan would like this Court to reverse the Commission's finding of violation with respect to at least three issues. First, if the Court adopts Hongan's claim construction for the term position 2, electrically connect, then all of those claims would be invalid for non-enablement and not infringed. Here, I think the parties agree that this claim term is unambiguous and should be construed according to its plain and ordinary meaning, but deferred as to what plain meaning is. Now, the Commission and Hongan argue this term should be construed to mean situated so as to be capable of electrically connecting, while Hongan argues this term should mean in a certain position or being placed to. In essence, there's no dispute with respect to the first portion of the Commission's claim construction, which states situated so as to. And Hongan does have a problem with the Commission's insertion of the word capable into the meaning of this term. So if you look at the plain meaning itself, it's very clear talking about a position. So think about almost like a drawbridge. When drawbridge closes, cars can go across bridge. When drawbridge opens, cars cannot, just like electric current, cannot go across. So plain meaning is very clear. This is a structural limitation talking about a position. And nothing in the claim or in the specification talks about capability with respect to this term. Well, you're actually reading, I mean, as the Commission noted, you'd be reading the phrase positioned to out of the claim. I mean, you're essentially saying they have to be electrically connected, right? That's not correct, Your Honor, because we are talking about structural limitation here. There's a reason for positioning. Even the subsequent claim limitation, claim one, where it talks about a lifter having a first position and second position. So it talks about specific structural limitation where the drawbridge or mobile bridge in this pattern will be at. So it's a structural limitation. We don't concede that we read those two words out of the claim at all. And furthermore, if electricity is not connected, there would be no electrical connection anyway. So for multiple reasons, all we argue based on plain meaning, it should be constituted as situated so as to, or in a certain position, or being close to. But where is the capability coming from? It's not, there's no support in the claim or in the specification. And if we look at prosecution history, here we're not arguing prosecution disclaimer here at all. We just note to the court that if Lepton wanted the claim to stay capable, they knew how to do it. They did that before. There's no explanation in the prosecution history as to why they changed the language, right? That's correct. So we don't have a disclaimer. Right, we are not arguing disclaimer at all. We're just arguing that prosecution history supports and is consistent with Hawaiian plain construction. That plain meaning of this term is in a certain position or being placed to. All right, but the administrative law judge said specifically that it would be possible to have it in a trip and a reset state at the same time. That's correct. And that one of skill and the art would understand that that's not what's intended. That's correct. And how is your construction not effectively proposing that? That's correct. That's actually exactly our point because the parties do not dispute on the Hawaiian plain construction, the device, the claim one, and all the other claims would be inoperable. But the court in Chef America case says when the claim, this particular claim, is unambiguous, the court cannot reject claims to make the claims operable. So essentially here I think the focus, we need to focus on… Yes, I mean essentially your plain construction invalidates these claims in a second, right? That's correct. Right, and assuming we don't agree with your claim construction, what do you have left on your obvious misdefects? Right, and that goes to my second point. The claim one is invalid over Mark Coop and DeSalvo. And here the claim one is important because the laboratory has studied many claims. If the court finds claim one is invalid, then the laboratory only established domestic industry with respect to claim one, then there would be no violation of Section 237. Here it's undisputed that the combination of Mark Coop and DeSalvo teaches all elements of claim one. Right, but I don't understand. The ITC found that you waived your argument and you didn't even address that to us on appeal. Your whole blue brief doesn't address the fact that the ITC held there was a waiver. They then went on to say even if there's not a waiver, we reached the following conclusion, but they expressly held that there was a waiver. So by failing to address it, it seems to me you waived the ability to even challenge obviousness. Your Honor, we didn't specifically mention the waiver issue, but in effect when we argue claim one is invalid over Mark Coop and DeSalvo, I do not believe that we waived that issue at all. But the ITC found you did. If you didn't think you waived it, you should have said that in your blue brief, and you didn't. The issue that you're appealing is the ITC's conclusion that you waived an argument, and yet you totally failed to address whether you did or did not waive it in your blue brief. Your Honor, the reading of ITC's opinion is not as clear. Even ITC did not argue that Hongwan waived that argument in ITC's opening brief in this appeal. So there is ambiguity. ITC said that there was a possibility. There was an argument about a waiver, but ITC went on to talk about substance, the merits of invalidity defense. So you're saying ITC waived the waiver? No, no. Sorry, Your Honor. I'm just saying ITC's commission opinion is not clear as to the waiver point. Therefore, even in ITC's opening brief, ITC's counsel did not argue waiver. But here's what it says. It says, we find that the Trimony Respondent's argument to the ALJ concerning the invalidity of the 809 patent depended upon claim constructions that were rejected by the ALJ. Oh, am I reading the wrong part? Hold on, I might be reading the wrong part. Oh, here it is. The ALJ determined that the Trimony Respondents provided no obviousness arguments for the 809 other than arguments based on their own construction of the claim term position to electrically connect. Because the ALJ rejected the Trimony Respondent's construction, he found Trimony Respondents had not presented clear and convincing evidence that the 809 patent was invalid. Is that the holding? I'm missing it. Angie, am I at the right place? Your Honor, may I have the page number? Sure. A-65 and 66. I think from A-65 and 66, the commission just described what was argued. Before the ALJ in A-67, the commission did say Trimony Respondent's argument largely depended upon claim construction that were rejected by ALJ. And the following sentence does not talk about waiver issue at all. How about page 67 where it says, you're right, it doesn't use the word waiver, but we find on page A-67, Trimony Respondent's argument to the ALJ concerning invalidity depended upon claim constructions that were rejected by the ALJ. So as a matter of fact finding, they've characterized your argument as being limited to obviousness under your claim construction only. Your Honor, I actually disagree with that point. Because even reading A-67, it talks about largely dependent upon claim construction. And there's no dispute that Trimony, which is what I call a claim respondent here, did present arguments about invalidity over the combination of the mark and the salvo. So the point, Your Honor, I'm trying to make is this particular paragraph is not clear as to the waiver issue. Even the commission's own opening brief does not address waiver at all. So we aren't there. Well, I guess what you're saying is on page 67, it's a little unclear to me. But the second sentence, however, so the commission kind of said it largely depended on the claim constructions that were rejected, but even if it didn't, and then it went on to construe that. So that's kind of – I don't know what it is, whether it's an alternative holding or whether it's just an observation. Your Honor, it would be cleaner if we argue waiver at all. I agree with you, Your Honor, here. But the point I'm trying to make is this particular paragraph is not as clear. It would be unclear to find waiver based on unclear findings here alone. And furthermore, the commission's own opening brief does not talk about waiver at all. I know Leviton argued about waiver, but that's not the commission's position, at least based on the commission's opening brief. All right, so even if we assume that your obviousness argument did not depend solely on your claim construction that the commission rejected and the ALJ rejected, don't you have other problems with your obviousness argument in the sense that the commission specifically found that your own expert admitted that it would be very difficult to undertake the combination that you're proposing? And in fact, that the commission found that in combination with your opponent's expert testimony was sufficient to allow the ALJ to conclude that there was no motivation to combine. Your Honor, I don't believe that respondents, our experts, ever testified that it would be difficult to combine those two references. In fact, Leviton's own expert conceded at trial and a cross-examination that, with the benefit of dissolval, it would be very easy to modify Mount Cool to practice plain law. Well, I mean, I have a little difficulty with that because your presentation in the briefs, and I think the other side sort of calls you on this, is sort of taking some of this testimony, it seems, out of context. And so I don't reach – reading the testimony in its entirety, I don't reach the same conclusion you necessarily reach because I think there are other aspects where he's quite clear that he doesn't agree with you on the obviousness conclusion. Am I misreading the record in your view? Do you know what I'm talking about? Yeah, I understand, your Honor. Leviton's expert did reach a conclusion that it's not obvious for one field in the art to combine two references. But when counsel for Hong An talked through each element, Leviton's expert conceded that, with the benefit of dissolval, it would be obvious to combine. But now let's take one step back. Even dissolval itself provides motivation to combine. Leviton conceded in their brief that the inventors, dissolval and Ziegler, came up with a solution of three isolated conductors. Essentially, dissolval talks about simply separate load from user load in a prior device, such as Mark Kutz's device. So in a way, in the prior device, like Mark Kutz's device, you have one single metal piece that constitutes load terminal and user load terminal. So all dissolval talks about is just separate that one metal piece into two pieces. Therefore, the combination here is very simple and the combination represents no more than a mere predictable use of prior elements. Your expert says this is how you'd have to do the combination. You'd have to separate the second conductor pair of Mark Kutz into two distinct pairs of electrical conductors that are electrically isolated from each other and connected to a load and a user receptacle respectively. And that is specifically what both Sandberg and the Commission found was not so simple. His description was a very complicated description of what would have to occur. And ALJ, based on Sandberg's description of that being a difficult process, and the Commission found that there would not be a sufficient motivation to undertake that exercise. So to address that point, I think there are two different sides of experts' testimony here. Even Labrador's own expert testified at one point would be obvious. Essentially, it would be obvious to combine them. And when he reached a conclusion, it's not obvious. But if we take one step back, just look at dissolval itself, it's conceded by Labrador's brief that the inventor dissolval and Ziegler came up with the three isolated conductors solution to address the reverse wiring problem in prior devices like Mark Kutz. So we don't even forget about experts' testimony. But motivation to combine can also be found in dissolval itself. So, I mean, under the Supreme Court's holding in KSR, it's merely a critical use of the prior elements according to its established function. There's no argument there's anything unpredictable coming out of this combination, Your Honors. I have one question about domestic industry before I sit down. Your other point is that there was insufficient showing of domestic industry with respect to 809. Does your argument really depend on your underlying assumptions that A and B under statute, under 337, that section A and B require actual manufacturing? That's not correct, Your Honor, because our argument depends on the fact that Prong A and Prong B need expenditures related to domestic manufacturing. It doesn't have to be domestic manufacturing activities only. For example, if there's value-added activities, it still could be. That was my point. You say that under A and B, you could have a thousand employees, you could have three plants, but if you're not actually manufacturing anything domestically, that A and B don't even apply. That's the argument. But if you don't manufacture anything, but if you provided value-added functions, not just administrative or marketing costs, that would be a pure importer of the activities. But if, for example, you perform warranty services, and the commission president has found under certain circumstances, even though the complainant manufactured products overseas, but if domestic activities related to manufacturing, to overseas manufacturing, that would add value. Like the quality control? There could be one type of activities that can be counted towards domestic industry. But here, I think we need to keep in mind that Labatant has the burden of proof here. We need to clearly separate out what type of expenditures that can be allocated to domestic industry. Can I ask you that? We can't talk about a lot of the record because confidential, so I guess I'm just going to ask you a general question, which is, would you characterize your appeal of the commission's decision as being over a question of law rather than a question of fact? I mean, you used the value-added. I don't know. I can't tell whether you're actually taking issue with the standard they applied, with the test they applied, or it's rather whether or not the numbers and the facts they used to justify their conclusion, you think that they are deficient. We actually rely on the error based on question of law, but not on the prime A and prime B related to domestic manufacturing. It's on the allocation by sales method used by the commission to allocate the majority of expenditures to the Phase 7 products. The record, including Labatant's own witness testimony, shows the entirely opposite picture. Since 2008, I couldn't get into details, but since 2008, there was no significant investment on Phase 7. So when the commission found domestic manufacturing, the commission cited certain numbers. Those numbers were based on allocation by sales, based on how much the sales were for Phase 7 products and how much were for Phase 10 products. So are you just saying they used the data for the wrong years? Not for the wrong years. That allocation by sales method, that legal method that the commission used to find domestic manufacturing is clearly erroneous legally. Under certain facts, the commission did use that allocation by sales method, but here the record does not support allocation by sales at all, because here we are reaching totally opposite factual results. So you're challenging a fact finding, because allocation by sales has been used consistently by the ITC for a long time. So you're not challenging the methodology. You're saying in this case, that methodology shouldn't have resulted in a finding of domestic industry. That's correct. So you're challenging a fact finding. We are challenging a fact finding, yes. And on top of that, there's incorrect legal standards. No, you're not saying the commission is not permitted to use allocation by sales in cases, are you? Not in this case. In some other cases, allocation by sales method may be used, but not in this case. Only because you think the facts don't support the findings, so you're challenging the facts. You're not challenging the legal standards. In a way, it is a mixture of facts and law. Okay. We're well over your time. We'll restore not the entirety of the six minutes you originally wanted to claim, but we'll give you two minutes on rebuttal, which means we're a little over, so two people on the other side will be a little lax, but not much. We'll hear from Mr. Chaney. Can you start with a waiver point? Is it the ITC's position, the ALJ's position about waiver of obvious misarguments except for obvious misarguments directed at their claim construction? Is the commission or the ITC's position today that the commission did not affirm that waiver determination? No, Your Honor. Page 67 of the commission's opinion intended to affirm the ALJ's waiver determination, and the commission's notice to the party, seeking additional briefing, specifically wanted to resolve that question. Why don't you argue that in your resume, then? I can only say that I was responding to the argument made by the appellant. He has a forceful response. If he's arguing obviousness, wouldn't your response be, like they did? You know, it's waived. If you're going to stand here and tell me you agree with the Leviton brief, you should agree with it in your brief, too. I readily concede the point. All right, now we'll let you move right on. See, sometimes it's good to concede things. I'm happy to do so. Turning to the claim construction argument with the position to electrically connect, the commission does believe, as the court has noted, that the respondent's argument reads the words position to out of the claims. It's not consistent with the description and the specification, which describes a movable bridge that connects two different configurations of conductors. It is a little weird, isn't it, though, that they take the word capable out and replace them with something else, and then their proposed construction is capable of. Yeah, I would happily address that if we can look at the process. Is it because capable of was originally only limited to one conductor, and now that they were meaning to explain that it was all three? No, if we look at the originally presented claim that appears in the appendix at A01461, and what we see is a claim that describes a completely different aspect of the invention than the issued claim. So we have a first conductor that's capable of being electrically connected to a specific thing, a source. Then we have a second conductor that's capable of being conducted to the load, and a third conductor that's capable of… I'm sorry, what page do you send me to? I'm sorry, Your Honor. It's A01461 of the appendix. And then the third conductor in that originally presented claim is capable of being connected to user-accessible plugs. So by the time we get to the issued claim, we're looking at something else entirely. We're looking at all three conductors capable of being electrically isolated from each other, and at least two of them being connected to the user-accessible plug. So we're concerned with a completely different arrangement, and there is no indication in the prosecution history that the reason that this claim was canceled entirely, this claim was not amended to get to the claim that was issued, but it was canceled entirely. The patentee pursued a different approach entirely on the invention that it was looking for, mostly focusing on the center latch, not focusing on the configuration of the conductors. And I think I heard my opponent concede, and I hope correctly, that he's not relying upon prosecution disclaimer. So I'm not sure why it even matters that the claim that's originally presented said capable of. I think the commission's construction was just trying to get at the dispute between the parties, which the ID didn't really resolve. And the dispute between the parties was how are these things configured in relation to each other? Do they need to be always connected, or do they only need to be positioned so that they can be connected? Right, so the language wasn't simply pulled out and replaced with something else. The claim was completely rewritten. That's correct, Your Honor. And I think rewritten with a focus on the center latch, if you look through the entire prosecution history. I'd now like to turn to the obviousness argument. I think that my opponent is arguing to this court that the court should re-weigh the disputed evidence in the record about whether it would be obvious to combine these references. And I think that that would be an inappropriate activity for this court in this mansion case. The court said that even if some evidence in the record detracts from the commission's conclusion, where there is substantial evidence supporting the commission's determination, it should be affirmed. Wait, I'm confused by what you're saying right now. Obviously, this is a question of law. We don't review it for substantial evidence. Are you focusing on motivation to combine, which is a question of fact, and saying there's substantial evidence for the commission's finding on that? Yes, Your Honor. Graham says that those underlying factual evidence. I just didn't appreciate that you were focused on individual facts. I thought you were talking about obviousness in general. I totally agree that the obviousness conclusion is a question of law based on underlying factual considerations. My opponent cited the inventor's own thought process as supporting this obviousness argument. Well, the inventor came up with the invention. So that, as a matter of law, is legally irrelevant. But the central focus on this obviousness determination was motivation to combine, correct? Correct. And didn't Sandberg, Leviton's expert, at least at one point say it wouldn't be that difficult to combine these things? I don't believe Mr. Sandberg said that. In fact, I think he said just the opposite. Well, he later came back and said it wouldn't have been obvious, but at cross-examination, he talked about it not being that difficult. His cross-examination testimony that is relied upon by my opponent, I think, says it would have been obvious in hindsight. Then the questioner says, you mean with respect, after you've looked at the prior art patent? And then he says, yes. Well, that must be an error, and it's inconsistent with the other testimony that the commission relied upon. Because hindsight can't be based on the prior art. Hindsight, by definition, means you're using the issued patent as a guide, as hindsight, to arrive at the claimed infection. Do you think Leviton's expert simply misspoke? I think he misspoke. And even if he didn't misspeak, there is substantial evidence where he unequivocally states that this is difficult to do, someone wouldn't know how to do it, and the commission credited that testimony. So when there's conflicting testimony about this underlying factual issue of motivation to combine, and there is substantial evidence supporting the commission's determination, this court should affirm that determination based on that evidence. And with regard to this argument that someone would simply know how to cut conductors and arrive at the claimed invention, that's not at all clear. If we snip the metal pieces in the manner that my opponent's expert testified that you could do, what are you left with? You're left with two floating pieces of metal. There is no evidence in the record about how those conductors should be connected to the rest of the circuit, how they're going to be reset, how they're going to be isolated. That evidence is simply not there. On domestic industry, would you agree that propelling the challenge is largely a factual one? I mean, the methodology that you used, the commission used, seems to be methodology that is endorsed in many cases. So methodology doesn't seem, allocation by sales, to be inherently wrong. So would you interpret his argument as limited to a factual challenge? I do, and I think that was conceded in the briefing, that they're not challenging the commission's interpretation of the statute, which would be a legal question, but rather they believe that the commission erred in relying on some data in support of its determination. And, of course, that determination is reviewed for substantial evidence. My colleague now, who was as wrong before as he is right now, will address that. Can I ask one last question on domestic industry? Wouldn't it be the commission's position that under A and B, if you build a massive plant and put a bunch of people in there, that it doesn't really matter what they do as long as you've got expenditures and as long as you've got the product being manufactured somewhere? It matters what they do with respect to the articles. If all you did was chip it in and then package it and market it, would that count? I'm not sure that I can answer that question, but if you build a massive plant and you fill it with engineers that design the articles that are built in another country, I think there's no question that Congress intended that to be a domestic industry. Under A and B or under C? Under all three. And I direct the court's attention to the House report cited in the commission's brief, which says before the 88 amendments we had no definition. Now we're creating a definition. The definition has three parts, and parts A and B are meant to codify preexisting commission practice, but we are intending all three parts to be broader than preexisting commission practice, and domestic manufacturing is not required, and I think in the legislative history it says under this definition, so it applies to all three parts. And there's no temporal requirement or limitation? In other words, if they designed this product back in 2000 and now it's being manufactured in China and now all the people that worked on the original design of the product are now working on designs of hamburgers, having nothing to do with it, that still satisfies the domestic problem? I think that this court has looked at the temporal limitation on domestic industry in different contexts, particularly if there's a concern that the industry has gone out of business. For example, I think there's a case about a bankruptcy or a transfer of the rights to patents. So I think that there are times when the court and the commission should look at something other than the time to file a complaint, but the court and the commission both have to be reasonable about what commercial practice entails. You build a product, you start getting it to market, and you move on to the next product, and we have substantial evidence in the record here, cited on page 36 of the commission's brief, that even though the engineers were indeed working on, the record shows, working on additional products, they had not left the products that practiced the patent behind. They were still involved in that product life cycle, and those products were still on the shelves. So I think that it's important to recognize certain commercial realities, and this is not a case where we see a dwindling or disappearing domestic industry that the court has been concerned about in other cases. Okay. Thank you. Do we have anything more on domestic industry? Unless the court has some questions, I'm going to just very briefly accept Mr. Chang's invitation to expound on the domestic industry issue just briefly. If you look at A11776 of the joint appendix, it shows the investments Leviton made in 809 patents in 2010 alone, and I have my client's permission to give the total number here. It's $10.7 million, and it's broken out on that page into several different categories. If you look at pages 65 and 66 of our brief, footnote 5, every one of those categories falls into a category where the commission has found that those types of activities constitute a domestic industry. So with the temporal issue, even if we set that aside, there's $10.7 million just in 2010. On the temporal issue, if we look at the video games controller's opinion from the commission April 14, 2011, the commission remanded something back to the judge, and this is what they said about the temporal issue. Quote, neither the language of the statute nor the legislative history preclude from consideration engineering and research and development investments that precede the issuance of the patent in determining whether a domestic industry exists or is in the process of being established. Indeed, as one ALJ has acknowledged, quote, often the lion's share of the research and development costs are incurred before the patent is obtained. Unquote. So that was addressing subsection C, and the commission never got to subsection C here. Actually, if you look a little farther up in that opinion, it talks about the other portion of the statute as well, I believe. But as to C, just so the record is clear, C was addressed and was addressed by the administrative law judge. Why the commission didn't reach C, I'm not sure. I assume they felt that the A and B evidence was sufficient. But if for some reason this court thinks the A and B evidence was insufficient, it needs to remand because C was an issue. Evidence was put in on C. There was a finding on C from the administrative law judge. But the bottom line is I think you can set aside that issue of timing because we have the 2010 numbers here. They're extensive, and they all break out into categories that the commission found count, such as quality control, testing, engineering, etc. So unless you have any questions, I have nothing further. Your Honors, I'd like to address the motivation to combine issue again with respect to Claim 1, the obviousness of Claim 1. I want to refer the court to page 15 of Hoan's Repatriate, where we provide a context, a very detailed cross-examination, where Mr. Sandberg, Labrador's own expert, conceded that a designer designed UTF-CI, and if he wants to prevent power from going to the face, separating user load from load is one of the options. Then we've gone through the disclosure of the 558 patent. When Council of ITC mentioned inventors' mind doesn't matter, we want to remind the court, here we are talking about the solver, not talking about the inventor for the 809 patent. So the prior patent, the inventor for the prior patent's understanding does matter here. Specifically, Mr. Sandberg conceded with that hindsight, and he was talking about the solver, 558 patent. Well, that's his yeah. Right. But that's followed, is it not, by kind of a detailed answer that really distances himself and makes clear that that's not really what he meant. Right. Is that not a fair assessment of the record? That's correct, and his explanation why it's not obvious to combine was that Mark Quinn, the solver, teaches mutually exclusive risk-safe assets, but that is irrelevant. Even under substantial evidence, that piece of evidence, commissioning Labrador and Labrador's expert relied on, it would not have been obvious to combine. You're just asking us to find Mr. Sandberg's ultimate conclusion with respect to motivation to combine not credible. Not at all. And that credibility determination is not something that we can make, is it? No, we're not talking about credibility. Even if his statement that those two references teach two separate risk-safe methods is right, is credible, it still has no relevance to the obviousness analysis of Claim 1. Because under Framley-John Deere framework, you're looking into the difference of prior and the claim language itself. Claim 1 does not require any specific risk-safe mechanism. Maybe that has some relevance to dependent claims, but has no relevance with respect to Claim 1. So Mr. Sandberg's conclusion that it's not obvious has no support, no relevant factual support here. Just think about, you know, if the unique— Final thought, just before we finish our time. Yeah, Your Honor, we would like the court to find the Claim 1 would be obvious in the event the court does not agree with us with the claim construction of position 2, and then find no violation of Section 337. Okay, we thank you. We thank all five for helping us move along on these arguments in the case that was submitted.